IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$58,860 UNITED STATES CURRENCY,<br><br>Defendant. | Civil No. 8:21CV484<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $58,860 U.S. currency seized by law enforcement from a vehicle operated by Daniel Baxter during a traffic stop on westbound Interstate 80 near mile marker 373 on August 21, 2021. Passengers include Daniel A. Hotaling, and Johnathan J. Bradley. Rachel Baxter, the sister of Daniel Baxter filed a claim for the defendant property.

3. The U.S. Customs and Border Protection (CBP) currently has custody of the defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C.

§ 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8. On August 21, 2021, Deputy Chase Parmer from the Seward County Sheriff's Office was stationed in his marked patrol car on Interstate 80 in the median near mile-marker 373, observing westbound traffic. Deputy Parmer observed a Toyota Corolla following too closely to a tractor-trailer truck in the inside lane by allowing less than one second between the vehicles. Deputy Parmer stopped the vehicle for violating Nebraska State Statute 60-6,140 ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent…"). Based on their New York state driver's licenses, he identified the driver as

Daniel P. Baxter, the front passenger as Daniel A. Hotaling, and the backseat passenger as Johnathan J. Bradley.

9. Deputy Parmer asked Baxter to exit the vehicle and sit in the front passenger seat of his patrol car while the deputy issued a warning. While completing his paperwork, Baxter informed the deputy that the vehicle was registered to his mother, Michele Baxter, and that he had been driving it for a couple of months. Baxter further stated that the other occupants were friends traveling from New York to the Redwoods in California and possibly to San Francisco. The group planned to visit Mount Rushmore during the return trip. Baxter said that he worked for a landscaping company and his two friends were mechanics. He stated the group had been driving non-stop from New York and were taking turns driving. Baxter admitted that he followed the tractor-trailer truck too close. When the deputy returned to the vehicle to verify the vehicle identification number (VIN) and to return the occupants' identifications, Deputy Parmer asked Hotaling about the purpose of their trip. Hotaling said that they were just traveling. He did not know to where they were traveling nor the purpose of the trip. Backseat passenger Bradley said that the group was going to see the Redwoods in California.

10. Deputy Parmer became suspicious during the traffic stop based on the following:

- Driver was positioned behind the 'B' pillar which is commonly done to stay out of sight of law enforcement.
- There were several beverages and snacks in the vehicle showing that the occupants were eating on the road, including numerous energy drinks.
- There were several empty energy drink containers on the rear floorboard.
- There was over 15,000 miles put on the suspect vehicle since June 7, 2021, according to CarFax for Police. In total there was over 37,000 miles put on the vehicle since March 16, 2021.
- Baxter was vacationing for two weeks during the prime season for landscaping when he claimed to be working for a landscaping company.
- Baxter had a positive criminal history.
- Seward Dispatch advised Deputy Parmer to use caution based on Baxter's criminal history.
- Hotaling had a positive criminal history, including drug offenses.

- Based on the deputy's encounters with other individuals, the overall travel plans and stories provided by the occupants were consistent with criminal activity.
- Deputy Seward noted the occupants were traveling between major source and destination city areas for large amounts of contraband.

11. After issuing the written warning for "Following Too Close," Deputy Parmer advised Baxter that the traffic stop was complete and asked if he would be willing to answer more questions, to which Baxter agreed. Deputy Parmer asked whether he had weapons, drugs, or money in the vehicle. Baxter said that he had a marijuana joint in the center console and $64,000 in cash in the vehicle. Baxter denied consent for a search of the vehicle. Based upon Baxter's admission of marijuana in the vehicle, Deputy Parmer advised that he was going to conduct a probable cause search of the vehicle.

12. When Deputy Parmer returned to the vehicle and informed the occupants that he was going to conduct a probable cause search, Hotaling said that he had marijuana in his backpack and pointed to a backpack on the front passenger seat floorboard. Deputy Parmer located the following during his search: a marijuana joint and a plastic bag of marijuana (.5 ounce) in the center console, four empty 5-hour Energy drinks in the center console, two Monster Energy drinks in the center cup holders and one in the driver door, several empty Energy drink cans on the rear floorboard, nearly an ounce of marijuana and paraphernalia in Hotaling's backpack, and eight rubber-banded bundles of U.S. Currency in Baxter's backpack.

13. Deputy Parmer read each of the vehicle occupants their *Miranda* rights, and then questioned them. Hotaling reported that he drove with Baxter to Eureka, California the month prior with another friend. After dropping Hotaling and the friend at a motel, Baxter left, returning with two duffle bags of vacuum-sealed marijuana. Hotaling estimated that the marijuana weighed about 20-40 pounds. The group then drove back to New York. Hotaling admitted that the

purpose of the current August trip was to also purchase and transport marijuana. Hotaling further admitted the cash found in the vehicle was going to be used to purchase marijuana. He signed a form abandoning his interest in the currency.

14. Deputy Parmer questioned Bradley, who denied having any knowledge of the currency, and he also signed a form abandoning any interest in the currency. Baxter reported that the currency belonged to his sister and signed the form abandoning his interest in the currency. Deputy Parmer seized the currency, marijuana, drug paraphernalia, and Baxter's cell phone.

15. After Deputy Parmer released the vehicle and its occupants, he returned to the sheriff's office where he had his certified canine sniff the bag with the currency. The canine alerted to narcotic odors. The currency was swabbed using D4D Drug Detection Kit and tested positive for marijuana. The currency was counted and totaled $58,860. Notably, the currency was primarily in $20 bill denominations (1,600 $20 bills). The rest of the money was in denominations of $100 (189 bills), $50 (159 bills), and $10 (1 bill).

16. The HSI Special Agent Kelly Bennett obtained background checks for the Baxters and the passenger Hotaling. Daniel Baxter has a history of resisting arrest and assault, as well as driving while impaired. Daniel Hotaling has a history of driving while impaired. Additionally, the local authorities obtained a search warrant for Daniel Baxter's phone. A Cellebrite review was conducted on the phone. The results indicated the phone was activated one day prior to the traffic stop. The review yielded thousands of emoji type photos, cell phone manufactured images and a hand full of irrelevant text messages. SA Bennet noted that it is typical for those involved in criminal activity to use a "burner phone," which is a disposable cell phone often used to evade detection by authorities. Rachel Baxter did not have a criminal history.

17.     Jones Bank created a cashier's check in the amount of $58,860 to United States Customs and Border Protection.

### Claim for Relief

WHEREFORE the United States of America prays the defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the defendant property; and for such other and further relief as this Court may deem just and equitable.

        UNITED STATES OF AMERICA,
        Plaintiff

        JAN W. SHARP
        United States Attorney

By:    s/ Kimberly C. Bunjer
        KIMBERLY C. BUNJER, #20962
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE   68102-1506
        Tel:   (402) 661-3700
        Fax:   (402) 345-5724
        E-mail:   kim.bunjer@usdoj.gov

## VERIFICATION

I, Kelly Bennett hereby verify and declare under penalty of perjury that I am a Special Agent Homeland Security Investigations (HSI) that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 17 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with Homeland Security Investigations (HSI).

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: December 30, 2021.

Kelly Bennett
Special Agent
Homeland Security Investigations (HSI)